# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **PIERRE JORDAN, #M07905,** | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 17−cv−0207−SMY |
| **MICHAEL LAMB,** | ) |
| **RUSSELL GOINS,** | ) |
| **DR BROOKHART,** | ) |
| **LT. WHEELER,** | ) |
| **C/O WEBER,** | ) |
| **C/O GAYE,** | ) |
| **MR. BOWNEN,** | ) |
| **SHERRY BENTON,** | ) |
| **SGT. HARPER, and** | ) |
| **CHRISTOPHER QUICK,** | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Pierre Jordan, an inmate in Lawrence Correctional Center ("Lawrence"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In his Complaint (Doc. 1), Plaintiff makes multiple claims against the defendants related to his treatment at Lawrence. He requests a prison transfer as well as monetary compensation from the ten named defendants. Plaintiff was previously granted leave to file an amended complaint, but failed to do so by the May 15, 2017 deadline. Therefore, this case is now before the Court for a preliminary review of the original Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a

prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
(b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

As a part of screening, the Court is allowed to sever unrelated claims against different defendants into separate lawsuits. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Severance is important, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *Id*. Therefore, consistent with *George*, unrelated claims will be severed into new cases, given new case numbers, and assessed separate filing fees.

## The Complaint

Plaintiff's Complaint (Doc. 1) is incredibly disjointed throughout. That said, the Court is able to decipher the following allegations: Plaintiff was assaulted by a fellow inmate, Herbert

2

Tribble, with a writing pen. (Doc. 1, p. 5). He was stabbed repeatedly in his arm and shoulder by Tribble and sustained laceration injuries that have since become permanent. *Id.* Nurse practitioners failed to administer first aid treatment to Plaintiff's wounds from the attack. *Id.* Weber recovered the weapon from Tribble and gave it to Harper as evidence of the attack. *Id.* Agent Haues took pictures of Plaintiff's injuries. *Id.* Plaintiff requested medical treatment from Harper and Jennings at his adjustment committee hearing on May 26, 2016, but they refused to assist him in getting medical treatment. *Id.* Plaintiff also sent an emergency medical grievance and disciplinary report grievance to Duncan and Strubhart. *Id.*

Plaintiff began to receive threats of retaliatory violence from Tribble's associates. When he reported these incidents, Harper, Wheeler and Goins failed to investigate the threats or to discipline the individuals threatening Plaintiff. *Id.*

While Plaintiff was in segregation, Reid and Soctkomp deprived him of dinner trays and once per week showers, placed him in tight handcuff restraints leaving him in pain, intentionally withheld mail from him and threatened him for submitting grievances. (Doc. 1, p. 13). Plaintiff believes these actions were racially motivated. *Id.* He reported this behavior to Williams, Kidd and Wheeler and they all failed to investigate and discipline Reid and Soctkomp. *Id.*

For the 16 days Plaintiff was on crisis suicide watch, Reid continued to psychologically and sexually harass and terrorize him as well as the other inmates. *Id.* Plaintiff continued to protest Reid's behavior to the "M.H.P.'s" who promised to report his concerns to other prison staff, but presumably failed to do so. *Id.*

Gaye and Halteroad behaved inappropriately toward Plaintiff as well by sexually harassing him. *Id.* Gaye and Halteroad also encouraged Plaintiff to perform sexual acts on himself and to engage in inappropriate sexual conversation for their gratification. (Doc. 1, p.

11). Administrative Review Board Office of Inmate Issues Chairwoman Sherry Benton and Lawrence County State's Attorney Quick failed to investigate Gaye's inappropriate sexual harassment of Plaintiff and other inmates. (Doc. 1, p. 19). Plaintiff sent an affidavit regarding Gaye's misconduct to Bownen, Quick and Jennings, and gave the same affidavit to Counselor Collins and Ginder. (Doc. 1, p. 9).

Plaintiff was subjected to unconstitutional conditions of confinement by Weaver, Duvall and Rutherford. (Doc. 1, pp. 14-16). These conditions included: excessive cold in Plaintiff's cell during the 2016 fall and winter seasons; toxic flood water from the utility room seeping into Plaintiff's cell; inadequate cleaning supplies provided to prisoners with which to clean their cells; inadequate bathroom facilities and procedures to accommodate the prisoners during day room time; inadequate and unsanitary food service and training of inmates who work in the kitchen; and excessive heat in prisoners' cells…from 95-100 degrees…that contributed to and increased bacterial and viral diseases on the gallery. *Id.* Plaintiff injured his back and legs in a fall caused by the floodwater in his cell. *Id.* He has also suffered from migraine headaches as a result of these conditions, which have seriously affected his breathing, thinking and sleeping. (Doc. 1, p. 15).

Plaintiff was intimidated verbally, sexually harassed and stolen from by Weber, Soctkomp, Reid, Duvall, Brumer and Erwin. (Doc. 1, pp. 16, 18). These corrections officers also allowed inmates to behave inappropriately in various ways. (Doc. 1, p. 18). Despite Plaintiff filing multiple emergency staff conduct grievances against these officers for their "unethical, unprofessional behavior," Assistant Warden of Programs Dr. Brookhart, Assistant Warden of Operations Goins, Warden Lamb and Lawrence County State's Attorney Mr. Quick attempted to cover up Weber's theft of Plaintiff's personal property, failed to investigate and

prosecute the C/Os and intentionally failed to protect Plaintiff and the other inmates from the crimes the C/Os were committing. (Doc. 1, pp. 16, 18). As a result of the continued harassment and intimidation by Weber and other inmates, Plaintiff attempted suicide on July 11, 2016. (Doc. 1-1, p. 10). Plaintiff was also attacked by his cellmate, Charles Perkins, soon after both he and Perkins alerted Smith that Perkins was a direct and immediate threat to Plaintiff's safety. (Doc. 1, p. 17). Plaintiff sustained injuries from this attack. (Doc. 1, p. 18). Prior to the attack, Perkins and Plaintiff "would share stories of [their] sexual conduct/interactions with M.H.P. Ms. Gay. [They] were both under the impression due to 'psychological manipulation' of M.H.P. Ms. Gay that [they] were both in a relationship with her." (Doc. 1, p. 17).

Plaintiff was obstructed from having meaningful access to the courts when Dr. Brookhart instructed Law Librarian Caslin to deny his request "to be placed on the legal deadline because they don't recognize civil and criminal litigation, only prison conditions." (Doc. 1, p. 19). As a result, Plaintiff missed a filing deadline in his tort case, a fact the opposing counsel cited as grounds for dismissal of the case. *Id.*

Plaintiff was stopped by Benton from petitioning the government for a redress of grievances and Lamb denied Plaintiff's emergency staff conduct grievances and requests for a P.R.E.A. investigation. *Id.* He was also denied adequate health care by the doctors, health care administrator and nurse practitioners at Lawrence when they failed to appropriately treat his athletes' foot, bruised ankle, Achilles tendon and nose laceration. (Doc. 1, p. 20).

## Discussion

The Court begins its § 1915A review with a note about the parties in this case. Throughout his Complaint, Plaintiff refers to the conduct of some individuals not named in the caption or defendant list. For example, he states that nurse practitioners, doctors, health care unit

administrators, Jennings, Duncan, Strubhart and Haues were deliberately indifferent to certain of his medical needs; that Williams, Kidd and Harteroad failed to protect him against certain abuses by the prison staff; that Reid, Soctkomp, Weaver, Duvall and Rutherford subjected him to unconstitutional conditions of confinement and cruel and unusual punishment; and that Smith failed to protect him from an attack by his cellmate. Because these individuals are not listed in Plaintiff's caption by name or by Doe designation, they will not be treated as defendants in this case and any claims against them should be considered dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (defendants must be "specif[ied] in the caption").

Turning to the allegations in Plaintiff's Complaint, the Court finds it convenient to divide the *pro se* action into the following enumerated counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1 –** Harper was deliberately indifferent to Plaintiff's medical needs when he refused Plaintiff's request that he help him get medical care on May 26, 2016 for the injuries Plaintiff sustained when inmate Tribble attacked him.

**Count 2 –** Harper, Wheeler, and Goins failed to investigate and discipline the inmates involved when Plaintiff informed them of threats of violence against him by inmates associated with inmate Tribble.

**Count 3 –** Wheeler failed to intervene to prevent Reid and Soctkomp from depriving Plaintiff of dinner trays and once per week showers, placing Plaintiff in tight handcuff restraints, intentionally withholding mail from Plaintiff, and threatening Plaintiff for submitting grievances after Plaintiff reported this behavior to Wheeler via an inmate request.

**Count 4 –** Weber subjected Plaintiff to cruel and unusual punishment by verbally and sexually harassing Plaintiff, making intimidating remarks to Plaintiff, stealing from Plaintiff, and making retaliatory threats toward Plaintiff, resulting in Plaintiff attempting suicide on July 11, 2016.

**Count 5 –** Brookhart, Goins, Lamb, Quick, and Wheeler showed deliberate

indifference toward Plaintiff and conspired to cover up unconstitutional acts of certain corrections officers, by intentionally failing to investigate and prevent Weber, Reid, Duvall, Soctkomp, Brumer, and Erwin from verbally and sexually harassing Plaintiff, making intimidating remarks to Plaintiff, stealing from Plaintiff, and making threats toward Plaintiff.

**Count 6 –** Brookhart violated Plaintiff's First Amendment rights by denying him access to courts when he instructed the law librarian to deny Plaintiff's requests with respect to his tort claim, causing him to miss his filing deadline.

**Count 7 –** Gaye subjected Plaintiff to cruel and unusual punishment by sexually harassing Plaintiff in counseling sessions.

**Count 8 –** Benton, Bownen, and Quick failed to protect Plaintiff when they ignored and failed to investigate Plaintiff's allegations of sexual misconduct against Gaye.

As discussed in more detail below, Count 1 will be allowed to proceed in this action, Counts 4, 6, 7 and 8 will be severed from this action and the remaining claims will be dismissed for failure to state a claim upon which relief may be granted. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.

## **Count 1 – Deliberate Indifference to Medical Needs**

A prisoner raising a claim against a prison official for deliberate indifference to the prisoner's serious medical needs must satisfy two requirements. The first requirement is an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious[.]'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The Seventh Circuit has found the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a

7

medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997).

The second requirement is a subjective standard: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that amounts to "'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 297). Liability under the deliberate-indifference standard requires more than negligence, gross negligence or even recklessness. It is satisfied only by conduct that approaches intentional wrongdoing, *i.e.*, "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Non-medical prison officials may satisfy the subjective component if they deliberately ignore a constitutional deprivation that is brought to their attention. *See Perez v. Fenoglio,* 792 F.3d 768, 781-82 (7th Cir. 2015). Generally, "prisoner requests for relief that fall on 'deaf ears' may evidence deliberate indifference." *Perez*, 792 F.3d at 782.

Plaintiff has satisfied the objective prong based on his allegation that he sustained permanent laceration injuries from being stabbed repeatedly. With respect to the subjective prong, Plaintiff alleges that he requested help to obtain medical care directly from Harper when nurse practitioners failed to treat his wounds and that Harper refused to assist him. These allegations are sufficient to state a viable claim. Therefore, Count 1 will be allowed to proceed against Harper.

### Count 2 – Failure to Protect from other Inmates

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for

the prisoner's safety. *Farmer*, 511 U.S. at 834. In order for a plaintiff to succeed on a failure to protect claim, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.*; *Pinkston*, 440 F.3d at 889. A plaintiff also must prove that prison officials were aware of a specific, impending and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). In other words, the defendants had to know that there was a substantial risk that Plaintiff was going to be attacked and must have failed to take any action. *See Sanville v. McCaughtry*, 266 F.3d 724, 733-34 (7th Cir. 2001). Conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston*, 440 F.3d at 889 (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

Here, Plaintiff alleges that Harper, Wheeler and Goins failed to investigate and discipline inmates associated with inmate Tribble, who threatened violence against Plaintiff. He does not however, allege that these inmates acted upon these threats to harm him. Nor does Plaintiff allege that he informed the defendants of any specific threats to his safety or that he was actually at risk of harm from these other inmates. For these reasons, Plaintiff's failure to protect claims against in Count 2 against Harper, Wheeler and Goins will be dismissed for failure to state a claim upon which relief may be granted.

## Count 3 – Failure to Intervene

Plaintiff asserts that Wheeler also failed to intervene to prevent Reid and Soctkomp from depriving him of dinner trays and once per week showers, from placing him in tight handcuff restraints, from intentionally withholding mail from him and from threatening him for submitting grievances. Plaintiff alleges that he reported this conduct to Wheeler via an offender request, but

9

that Wheeler failed to investigate the situation and/or discipline Reid and Soctkomp. Because Wheeler was not a direct participant in the alleged cruel and unusual punishment and First Amendment access to mail and retaliation violations, his liability would be based solely upon his knowledge of the deprivations and failure to act to remedy them. *See Perez*, 792 F.3d at 781-82 (citing *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) ("[A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition.")).

Under this standard, Plaintiff has not provided sufficient information to implicate Wheeler. It is unclear from Plaintiff's allegations whether Wheeler actually received his inmate request. It is also unclear whether Plaintiff provided Wheeler with sufficient detail in his inmate request to put him on notice that constitutional deprivations may have been occurring. Moreover, the Court "need not try to fish a gold coin from a bucket of mud" in order to decipher whether any of Plaintiff's 159 pages of exhibits sheds light on the content of his request to Wheeler. *See United States ex rel. Garst v. Lockheed–Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). The Court is also unable to assess from Plaintiff's allegations whether a constitutional deprivation potentially occurred given the fact that Plaintiff did not include Reid or Soctkomp as defendants to this action and otherwise provided minimal information about the alleged deprivations. Thus, Count 3 will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Count 4 – Cruel and Unusual Punishment by Weber

Plaintiff alleges that sustained verbal and other abuses by Weber, including the theft of

some of his personal property, caused him to attempt suicide. Typically, allegations of verbal harassment state no claim under the Eighth Amendment. *Dobbey v. Ill. Dep't of Corrections*, 574 F.3d 443, 446 (7th Cir. 2009). *See also DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws"). In certain circumstances, however, verbal harassment may rise to the level of cruel and unusual punishment. *See Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015).

Weber's alleged harassment of Plaintiff involved both verbal harassment and abusive action in the form of the theft of Plaintiff's personal property. Further, similar to the plaintiff in *Beal*, Plaintiff "claims to have experienced severe psychological harm as a result of the incidents described in his complaint—psychological harm that induced him to" attempt suicide, similar to the *Beal* plaintiff who sought "psych service." *Id.* While it appears to be a close case as to whether Plaintiff's allegations against Weber should be allowed to proceed past threshold, this Court need not make that determination as Plaintiff's claim against Weber is entirely unrelated to his medical needs claim against Harper. As such, Plaintiff's cruel and unusual punishment claim against Weber will be severed into a new case. *See George,* 507 F.3d at 607.

### Count 5 – Conspiracy and Deliberate Indifference of Brookhart, Goins, Lamb, Quick and Wheeler

Plaintiff alleges that Brookhart, Goins, Lamb, Quick and Wheeler attempted to cover up Weber's theft of Plaintiff's personal property, failed to investigate and prosecute corrections officers that were harassing him and intentionally failed to protect Plaintiff and the other inmates from the crimes the corrections officers were committing after Plaintiff submitted emergency grievances against the officers for their "unethical, unprofessional behavior." To the extent Plaintiff seeks to bring a conspiracy claim against these defendants, his conclusion that

11

Defendants' actions amounted to an unlawful conspiracy is unsupported by factual allegations. Claims of conspiracy necessarily require a certain amount of factual underpinning to survive preliminary review. *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him." *Sow v. Fortville Police Dept.*, 636 F.3d 293, 304-05 (7th Cir. 2011). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id.* at 305 (quoting *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir.1999)).

The mere allegations that Plaintiff submitted emergency grievances against corrections officers for their inappropriate behavior and that the relevant defendants failed to act to protect Plaintiff from these alleged abuses does not establish a conspiracy. The Complaint contains no factual support for the idea that the defendants had a meeting of the minds to harm Plaintiff. Instead, Plaintiff's claim that the defendants engaged in a conspiracy to cover up the violation of his rights rests solely on his own conclusions. Conclusory legal statements are insufficient to state a claim that survives review under § 1915A. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Accordingly, Plaintiff's conspiracy claims asserted in Count 5 against Brookhart, Goins, Lamb, Quick and Wheeler will be dismissed for failure to state a claim upon which relief may be granted.

Similarly, Plaintiff's deliberate indifference claim against these defendants cannot proceed. Plaintiff claims that he submitted emergency grievances and that the defendants failed to act on them. However, he does not allege who, if any, of the defendants actually received and

reviewed the grievances. He also does not allege that the grievances submitted would have enabled the defendants to intervene and prevent further abuses by the corrections officers, or that the grievances alerted the defendants that may have received them of an ongoing constitutional violation. In other words, Plaintiff has failed to plead enough facts to elevate from possibility to probability his claim that these defendants should have and were capable of intervening to stop the alleged abuses. Count 5 will therefore be dismissed in its entirety, without prejudice.

### **Count 6 – Access to Courts**

Plaintiff asserts that Brookhart violated his First Amendment rights by denying him access to courts when he instructed the law librarian to deny Plaintiff's requests with respect to his tort claim, causing him to miss his filing deadline. Prisoners have a fundamental right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977).

> Prison officials have an affirmative duty to provide inmates with reasonable access to courts, which includes providing access to adequate libraries (or counsel). *DeMallory v. Cullen*, 855 F.2d 442, 446 (7th Cir. 1988). The right of access "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). Nonetheless, reasonable access does not mean unlimited access. *Hossman v. Sprandlin*, 812 F.2d 1019, 1021 (7th Cir. 1987).

*Martin v. Davies,* 917 F.2d 336, 338 (7th Cir. 1990). Violations of the right of access to the courts may be vindicated in federal court in a civil rights action pursuant to 42 U.S.C. § 1983.

An allegation of actual or threatened detriment is an essential element of a § 1983 action for denial of access to the courts, *Martin* 917 F.2d at 340; *Howland v. Kilquist,* 833 F.2d 639, 642-43 (7th Cir. 1987); *Hossman,* 812 F.2d at 1021-22. Such an allegation must be more than conclusory.

> The requirement that prisoners making access-to-courts claims allege specific prejudice should not be understood as an onerous fact-pleading burden; it is simply a requirement that a prisoner's complaint spell out, in minimal detail, the

13

connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions.

*Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). In this case, Plaintiff claims that Brookhart's instructions to the law library staff to deny Plaintiff's request with respect to a tort claim he was litigating resulted in his missing certain filing deadlines for that case. Plaintiff's missing the deadline was cited as grounds for dismissal of Plaintiff's case.

Although Plaintiff may have stated a colorable access to courts claim, at least at this stage, this Court will exercise its discretion to sever this claim from the instant case as it involves an unrelated claim against a different defendant than the claims that will be allowed to proceed herein. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Therefore, Count 6 will be severed into a new case.

### Count 7 – Sexual Harassment

An Eighth Amendment claim for sexual harassment has been recognized. *See, e.g.*, *Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007). However, Plaintiff's "complaint alleges only sexual harassment consisting of words and gestures rather than any physical abuse. And while an allegation of sexual abuse of a prisoner would state a claim under the Eighth Amendment for cruel and unusual punishment, verbal harassment does not" absent extreme circumstances. *Allen v. Wine*, 297 F. App'x 524, 530 (7th Cir. 2008) (citing *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000)). Nevertheless, Plaintiff's potential sexual harassment claim against Gaye is unrelated to the other claims in this action – in both subject matter and with respect to the defendants involved. Accordingly, the Court will exercise its discretion and sever this claim against Gaye into a separate case. *See George,* 507 F.3d at 607.

### Count 8 – Failure to Protect from Sexual Misconduct

Plaintiff alleges that Benton, Bownen and Quick failed to protect him when they ignored

14

and failed to investigate Plaintiff's allegations of sexual misconduct against Gaye. Because this claim is also separate and distinct from the claims asserted in Count 1 that will be proceeding in this action, and is factually related to Plaintiff's allegations underpinning Count 7, Count 8 will be severed into the same action as Count 7. *See George,* 507 F.3d at 607.

**Pending Motions**

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3), which is hereby **DENIED** without prejudice. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013). When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). If so, the Court must examine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question ... is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id.*

With regard to the first step of the inquiry, there is no indication that Plaintiff has attempted to obtain counsel on his own, or has been effectively precluded from doing so.

Because Plaintiff has not made this showing, the Court finds that Plaintiff has not made a reasonable attempt to find counsel. Though this Court is denying Plaintiff's Motion at this time, it will remain open to the appointment of counsel in this case if the need arises in the future.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT 4,** which is unrelated to the surviving claim in this action, is **SEVERED** into a new case against **WEBER.**

**IT IS FURTHER ORDERED** that **COUNT 6**, which is unrelated to the surviving claim in this action, is **SEVERED** into a new case against **BROOKHART**.

**IT IS FURTHER ORDERED** that **COUNTS 7** and **8**, which are unrelated to the surviving claim in this action, are **SEVERED** into a new case against **GAYE** (Count 7), **BENTON** (Count 8), **BOWNEN** (Count 8), and **QUICK** (Count 8).

The claims in the newly severed cases shall be subject to screening pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment is made. In the new cases, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The Complaint (Doc. 1); and
- Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* (Doc. 2).

Plaintiff **will be responsible for an additional $350 filing fee** in each newly severed case.[1] No service shall be ordered in the severed cases until the § 1915A review is completed.

**IT IS FURTHER ORDERED** that **COUNTS 2**, **3**, and **5** shall be **DISMISSED** without prejudice as against all defendants for failure to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that the *__only claim remaining in this action is__* **COUNT**

---

[1] Pursuant to 28 U.S.C. § 1914, effective May 1, 2013, an additional $50.00 administrative fee is also to be assessed in all civil actions, unless pauper status is granted.

16

**1**, which shall **PROCEED** against **HARPER**.

**IT IS FURTHER ORDERED** that Defendants **BROOKHART, GAYE**, **LAMB**, **WHEELER**, **GOINS**, **BENTON**, and **QUICK** are **TERMINATED** from **this** action without prejudice and **WEBER** and **BOWNEN** are dismissed from **this** action with prejudice.

**IT IS FURTHER ORDERED** that as to **COUNT 1**, the Clerk of Court shall prepare for **HARPER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendant's place of employment as identified by Plaintiff. If the defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon the defendant (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on the defendant or counsel. Any paper

received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Harper is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), the remaining count in this action, Count 1 against Harper, is **REFERRED** to United States Magistrate Judge Reona J. Daly for further pre-trial proceedings. Further, this matter shall be **REFERRED** to United States Magistrate Judge Reona J. Daly for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**
**DATED: 6/13/2017**

                                                                s/STACI M. YANDLE
                                                                  **U.S. District Judge**